**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Magistrate No.: 25-mj-93** |
| **v.** | : | |
| | : | |
| | : | |
| **ZACHARY BRANDNER,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its request that defendant Zachary Brandner be detained pending trial of this matter pursuant to 18 U.S.C. § 3142(f)(1)(A). Mr. Brandner is charged with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), based upon his April 1, 2025 distribution of child pornography to an undercover officer. Distribution of Child Pornography is a crime of violence and there is no condition or combination of conditions that will reasonably assure the safety of children in the community – both in the physical world and online – if Mr. Brandner is released. As detailed below, an analysis of the factors set forth in 18 U.S.C. § 3142 leads to the conclusion that detention is the only way to protect children in the community and to ensure the defendant's future appearance.

**FACTUAL BACKGROUND**

On April 1 2025, an undercover officer (UC) with the FBI's Child Exploitation and Human Trafficking Task Force was on Jack'd, a platform for individuals to make social and romantic connections.

On April 1, 2025, the UC was contacted by the Jack'd user "fart fetish 👃 👃," who was later identified as the defendant. Brandner's profile indicated that he was approximately a mile away from the UC, that they are 6'5", and that they lived in "SW." This was consistent with Brandner's address on H Street in Southwest Washington, D.C. Brandner had the following conversation with the UC via Jack'd direct message:

> Brandner:  Into kids?
> Undercover:  I can be.  They're adorable (Brandner reacted to this message with a purple devil emoji).
>
> Brandner:  Same dude.  Little boy cock.  So cute.  Bet ur kids are cute 😊  I have Tele if ur down to chat more!
>
> Undercover:  Hell yah.  What's your tele?
>
> Brandner:  zboi29

On April 1, 2025, at approximately 11:12 AM, the UC messaged zboi29, also later identified as Zachary Brandner, via Telegram. The user had a display name of Z.  Brandner advised the UC that he was interested in "…infants up to 12" and asked the UC if he had kids.  The UC advised that he has a son that is nine and he is sexually active with him.  Brandner asked the UC, "Done anything w him" and the UC advised, "I have…..got anything pervy so I know you're cool.  Don't care what it is."

Brandner forwarded a video file that is five minutes and thirty-six seconds long that showed an infant boy being undressed and then restrained on his back with a piece of cloth to a small piece of furniture by an adult male.  The adult male is observed from the waist down with his penis exposed squatting over the boy and defecating on the child's chest and then urinating in the child's mouth.  The child's restraints are removed and then restrained stomach down on the piece of furniture with a cloth.  The adult male slaps the child's buttocks and inserts his fingers into the

child's anus.  The adult male then ejaculates onto the child's buttocks.  Brandner then forwarded a second video that is fifty-seven seconds long and shows a prepubescent boy having his mouth penetrated by the erect penis of an adult male.

Brandner reported after sending the second, "I'm sorry i don't have much" and then stated after sending the second video, "But I'm super child bro."  Brandner commented on the infant's video, "Hell yea.  Rape it.  U have some i could see?  Or maybe ur son."  The UC forwarded a photograph of his purported son and a photograph of his purported penis and asked Brandner if he had any experience.[1]  Brandner reported "Yes some" and advised "Hottttt" regarding the photos sent by the UC.  The UC advised how he sexually abuses his purported son and Brandner asked, "Fuck yeah.  Fr?  And he enjoys it?  How do u keep him quiet?  Just curious."  The UC advised Brandner how he has kept his purported son quiet regarding the abuse.

The UC found that Brandner had blocked the UC on Telegram and Jack'd shortly after UC discussed how he keeps his purported son from disclosing abuse.

Pursuant to a search warrant, law enforcement obtained the contents of Brandner's Jack'd account that he used to communicate with the UC. The account contained the following messages:

"I'm on my way to my brunch now. I really am sorry dawg. I don't know wtf happened. But I'll make it up to u. My building XX[2] H St Sw room 848. In telling u that so soon as im back next time ur free u can just show up." – January 26, 2025

---

[1] The photograph of the UC's purported son did not depict a real child. The photograph of a purported penis did not depict a real penis.

[2] The message contained the correct street address, which is consistent with Brandner's address.

What do i do for work? I was an IT account manager but i gave it up a week ago to be a

congressional staffer" – January 23, 2025

"Into watching young boys poop on eachother?  I got Telegram if so.  Yea but u chill

with twisted ages like Yng?  Got super sloppy vids…Anyone who don't like little boys

being pooped on is lying lol…Yep and some with dads pooping in the boys…I mean I'll

show i haha.  Just gotta be cool with watching kids.  I'm chill just wanted to make sure u

were haha….Back when i was a student at Pitt i think we talked but i was just discovering

my shit fetish then." – January 26, 2025 at 4:33 UTC

On May 20, 2025, Brandner messaged the UC via Jack'd direct message and asked "Real

dad."  On May 22, 2025, the UC responded to Brandner who did not indicate remembering

messaging the UC previously at this point, but did indicate in the chat that he had a sexual

interest in children.  Brandner told the UC that he, "Wish it was normalized man," "I think most

men are into it," "…Idk I'm just very turned on by Yng," "And the younger the better."

Brandner indicated an interest in gaining experience with a child and provided the Telegram

account of Zboi29 (the same account the UC previously used to communicate with Brandner) to

communicate with the UC further.

On May 21, 2025, at 11:43 am, the UC messaged Zboi29 via Telegram direct message.

The UC advised Brandner that they had spoken in the past and asked why he had blocked the

UC. Brandner reported that he had "gotten scared in the past.  But not anymore."

The UC again advised Brandner that he is a father to a nine-year-old purported son and

Brandner advised, "Nice dude great age."  Brandner also reported, "I feel like 12 is the cut off

for me."  Brandner asked the UC how he sexually abuses the purported child and how he keeps

the purported child from disclosing.  Brandner also indicated an interest in meeting the UC to

4

build up trust and then meet the UC's purported son.  Brandner advised the UC, "We could meet and perf the first time.  Perv" and indicated, "Can't wait to see him."  The UC asked, "What do you want to see" and Brandner reported, "Anything tbh.  His little cock."

**Identification of Brandner**

On April 1, 2025, an administrative subpoena was issued to Perry Street Software, the parent company of Jack'd, by a member of the FBI.  The FBI requested subscriber information and internet protocol (IP) logs for the identified account.

On April 30, 2025, Perry Street Software responded to the administrative subpoena and indicated that the account had been accessed on April 28, 2025, from an IP address of 70.21.16.223.  70.21.16.223 generally resolves to a Verizon Fios subscriber in Washington, D.C.

Perry Street Software also provided latitude and longitude for the account being accessed at 38.880108284786, -77.011122575394 which when plotted resolves to an apartment building at XX H Street Southwest, which was consistent with the address Brandner provided in his chats *infra*.  The account user provided biographical information for the account which included information indicating they lived in SW (indicating Southwest Washington, D.C.), are "Hispanic / Latino," and a date of birth of 11-30-1997.

Perry Street Software also provided images used by the user as profile pictures.  These photographs were analyzed by a member of the FBI CEHTTF using law enforcement sensitive facial recognition tool.  Agents subsequently identified a possible match to the profile pictures of Zachary Silas Brandner with a date of birth of 07-05-XXXX and a current address of XX H Street Southwest #849, Washington, D.C. via a law enforcement only database.  Moreover, agents verified with the leasing office for XX H Street Southwest that Brandner is on the lease for an apartment at that property.

An FBI agent requested that a member of the United States Postal Service (USPS) check for deliveries to XX H Street, #849, Southwest, Washington, D.C.  The USPS employee reported that Brandner had received a package at XX H Street #849, Southwest, Washington, D.C. on September 3, 2024.

A photograph used by the Jack'd user is attached below along with a driver's license photograph of Zachary Brander.



## APPLICABLE LEGAL STANDARD

The defendant is charged with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), a crime of violence.  18 U.S.C. § 3156(c) defines a "crime of violence" to include violations of Title 110, under which § 2252(a)(2) falls.  Further, § 2252(a)(2) gives rise to a rebuttable presumption of detention pursuant to 18 U.S.C. § 3142(e)(3)(E), where it is to be *presumed* that no combination of conditions will protect the community or assure the defendant's return.  § 3142(e)(3)(E).  This presumption "operate[s] at a minimum to impose a burden of

production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"); *see also United States v. Hir,* 517 F.3d 1081, 1086 (9ᵗʰ Cir. 2008). Even if the defendant does not pose a flight risk, danger to the community by itself is a sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010)

("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## ANALYSIS

Defendant Brandner poses a significant danger to children in the community – including children who are being preyed on over the internet as well as children in the physical world – and there are no conditions short of detention that will protect children from her predation. For the reasons addressed below, the factors outline in 18 U.S.C. § 3142(g) weigh in favor of detention and Brandner cannot rebut the presumption that he shall remain detained.

### A.    Nature and Circumstances of the Charged Offense

Brandner's conduct in this case poses a risk to children in the physical and online world. Brander made a conscious choice to not only communicate with the undercover agent about sexually abusing children, but them move the conversation over to Telegram, an encrypted platform. After blocking the undercover on his Jack'd and Telegram accounts, the defendant reengaged with the undercover officer, again discussing the sexual abuse of children. The messages in Brandner's Jack'd account further show that he was not just discussing sexually exploiting children with the undercover agent. He was also discussed sexually abusing children with at least one other use. The images he distributed, specifically the image depicting the humiliation of an infant and the repeated sexual abuse of the child demonstrates Brandner's sexual interest in children. Brandner's statements to the undercover stating his interest in meeting the undercover's purported child in person to sexually abuse him further underscores the danger he poses to the community – and specifically children – if released.

Brandner's conduct demonstrates that she poses a danger both to children in the physical world, as well as to children who are suffering the aftermath of having images of their sexual abuse

distributed online.  On a broad level, children depicted in sexually explicit images and videos are victimized at the time the images were created, and they are re-victimized each time an individual, like the defendant, views the images for their own sexual gratification. As explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.

> ...every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011)(quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

Indeed, Congress has recognized the serious nature of crimes involving child pornography and the long-term damage that these crimes can cause, by specifying that these crimes carry a rebuttable presumption of detention.  § 3142(e)(3)(E).  Brandner is alleged to have distributed child pornography in the context of actively discussing the sexual abuse of a young boy.  In these circumstances, there is no combination of conditions that will protect children both online and in the physical world from the danger posed by the defendant and the Court should detain Brandner pending trial.

**B. The Weight of the Evidence Against the Defendant**

The weight of the evidence against the defendant is very strong and weighs in favor of detention. The government is in possession of the chats between the defendant and the undercover agent, which are the evidence of the defendant's criminal conduct. The defendant's own statements in his chats, indicating his address and other personal identifying information, connects him to the chats. Moreover, the subscriber information associated with the defendant's Jack'd account, including his name, his address, and his photograph, clearly establish the defendant as the user of the Jack'd account.

A district court must consider the weight of the evidence when assessing whether the defendant is a danger or poses a risk of flight and has broad discretion to determine the relative weight of each of the four Bail Reform Act factors. *See United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *9 (D.D.C. Feb. 6, 2023), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023) ("First, nothing in the BRA's text requires or alludes to a differing weighing of the factors nor any hierarchy among the factors."). No factor is categorically of greater or lesser weight than the others. As the Second Circuit Court of Appeals observed:

> Although § 3142(g) of the Bail Reform Act lists various factors to consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant. *See generally* 18 U.S.C. § 3142(g). That silence is unsurprising, because the weight given to each factor will inevitably vary from case to case, and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight. What is more, certain factors might interact with one another in a particular case in a way that alters a court's analysis of a defendant's danger to the community or flight risk.

*United States v. Zhang*, 55 F.4[th] 141, 149-50 (2[d] Cir. 2022). In *Zhang*, the Second Circuit found that the district court gave appropriate weight to the second factor – the weight of the evidence – in determining that there was "significant evidence" that Zhang had in fact committed the charged

murder. *Id.* at 150-51. Affirming the district court's relative reliance on the weight of the evidence in determining dangerousness, the court explained:

> In making a predictive assessment of the defendant's future dangerousness if released into the community, common sense and § 3142(g)(2) aligned with the district court's consideration of the strength of this evidence, especially coupled with the nature of the charged offense. It stands to reason that the more strongly the evidence indicated that the defendant committed the murder, the more likely he poses a danger to the community if released on bail.

*Id.* Similarly, in considering whether the defendant poses a risk of flight, the court explained that where "the evidence against a defendant is strong, it follows that the defendant faces an elevated risk of conviction (and of the attendant punishment), and therefore may present an elevated risk of flight. *Id.* at 151-52.

The *Zhang* court's analysis has been cited approvingly in the District Court of the District of Columbia in *Blackson*, and its analysis holds true here as well. *Blackson,* 2023 WL 1778194, at *9-10. The evidence against Brandner is strong, suggesting both a heightened danger to the community as well as an elevated risk of flight. The strength of the evidence strongly supports detention, as it indicates the significant risk of danger posed by the defendant.

### C.    History and Characteristics of the Defendant

While the defendant does not have any criminal history, there is reason to believe that he has engaged in criminal conduct prior to his conduct in this case. The return from the Jack'd warrant shows that the defendant was communicating with at least one other individual regarding the sexual abuse of a child. The defendant's desire to seek out a community of like-minded individuals who are interested in the sexual abuse of children demonstrates that his conduct in this case was not one instance of poor decision making. Moreover, the defendant's conduct in this case was sustained over a period of time. The initial communication between Brandner and the UC occurred on April 1, 2025. The defendant then reengaged with the UC on May 20, 2025, more than

11

a month later, and did not recall that this was the same individual he previously communicated with. This evidence shows that the defendant's lack of criminal history does not accurately portray his history of criminal conduct. Thus the defendant's history and characteristics weigh in favor of detention.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

Finally, the sexual exploitation of children presents a serious danger to the community, which results in severe mental, emotional, and physical trauma to the countless children who are victimized by offenders like the defendant and others with a demonstrated sexual interest in children.   It is this type of harm that led Congress to create the statutory presumption of detention in these cases.

That child pornography offenses are serious is a fact noted by the Supreme Court. At least as early as the landmark decision, *New York v. Ferber*, 458 U.S. 747 (1982)*, the Supreme Court referenced numerous research materials detailing the harm to children as a result of the production and trafficking of child pornography.

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."

Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981). *See also* Child Exploitation 292 ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions"); Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation, 12 U.Mich.J. Law Reform 295, 301(1979)(interview with child psychiatrist) ("The

victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child"). 458 U.S. 758, n.9.

Moreover, as the Eastern District of New York has found:

...the issue is not only defendant's potential abuse of children and his interaction with children if on bail, but also his ability, if he is released on bail, to attempt to possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.

*United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006). The *Reiner* court further found that there were no conditions in that case that could reasonably assure the safety of the community "[i]n this day and age, with devices such as cellphones, Blackberries, and laptops..." Id. at 399; *see also United States v. Blankenship*, 2008 WL 1925137 (S.D.W.Va. April 29, 2008) (S.D.W.Va. April 29, 2008)(unpublished)(noting the ease of accessing the internet by means of various devices and stating "[t]he Court finds that the evidence clearly and convincingly establishes that, confined to his home and electronically monitored, defendant would not be prevented from obtaining the means to access the internet and attempting again to obtain child pornography and in this poses a danger to children and the community"); *United States v. Doyle,* 2007 WL 1097844, *1 (W.D.Va. 2007)(finding danger of future offenses "especially considering that pornographic images of children are widely available on the internet and can be easily accessed by a personal computer"), conviction rev'd on other grounds, 650 F.3d 460 (2011).

In addition to distributing sadistic images of the sexual abuse of children, Brandner also indicated he was willing to sexually abuse a child in person. The risk the defendant poses to children in the community is significant and weighs heavily in favor of detention.

## **CONCLUSION**

For all of the reasons set forth above, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the defendant should be detained pending trial.

Respectfully submitted,

Jeanine Ferris Pirro
United States Attorney

_____/s/ Janani Iyengar_____
Janani Iyengar
NY State Bar No. 5225990
Chief, Child Exploitation and Human
Trafficking Section
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-7760
Email: Janani.iyengar@usdoj.gov